J-S23010-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
:      PENNSYLVANIA
           Appellee :
:
           v. :
:
ALEXIS DELACRUZ, :
:
           Appellant : No. 547 EDA 2014

Appeal from the Judgment of Sentence January 16, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0006735-2012

BEFORE:  DONOHUE, SHOGAN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED MAY 15, 2015**

Alexis Delacruz ("Delacruz") appeals from the judgment of sentence

entered on January 16, 2014 by the Court of Common Pleas of Philadelphia

County, Criminal Division, following his convictions of recklessly endangering

another person ("REAP"), persons not to possess, use, manufacture, control,

sell or transfer firearms, and carrying firearms on public streets or public

property in Philadelphia.[1]  We affirm.

The trial court summarized the relevant facts of this case as follows:

> On December 29, 2011, at approximately 8:30 p.m.,
> [Delacruz] had a disagreement with his ex-girlfriend,
> Alicia Martinez, at her grandmother's house on 3419
> Kip Street in Philadelphia.  The argument turned
> violent, and Martinez's mother, who was also present
> at the residence, telephoned Michael Jones
> [("Jones")], the complainant, to come to the scene.
> Jones arrived shortly after, along with Frank Dyches

---

[1]  18 Pa.C.S.A. §§ 2705, 6105(a)(1), 6108.

*Retired Senior Judge assigned to the Superior Court.

[("Dyches")], the boyfriend of Alicia Martinez's mother. Jones and Dyches spoke first to Martinez inside the house, and then to [Delacruz] outside of the house. The conversation outside of the house lasted for approximately [ten] minutes. According to [Jones'] testimony, [Delacruz] mumbled something and walked away. As Jones and Dyches walked away, Jones heard a gunshot from behind him. Jones then turned and saw [Delacruz] running from the block.

[Jones'] trial testimony differs from the original statement he gave police on the night of the shooting. According to [Jones'] statement, after [Delacruz] walked away from the conversation, Jones overheard him on the phone telling someone to "bring the hammer around." Jones understood "hammer" to mean gun. Jones then witnessed another man, who he believed may have been [Delacruz]'s brother, handing [Delacruz] a silver gun. [Delacruz] began to approach Jones, who called out to him, "What, you want to shoot me? Shoot me then." [Delacruz] pointed the gun at Jones. As Jones turned away from [Delacruz], the shot was fired.

In his testimony, Jones claimed that his police statement was incorrect: he did not see a gun, and while he heard a gunshot, he does not know who was responsible for it. Jones claimed that his statement was confused with [Dyches']. Detective Patrick Winward [("Detective Winward")] took [Jones'] statement on the night of the shooting. Detective Winward testified that Jones was friendly and cooperative on the night the statement was taken, and arrived in his own transportation. Jones signed the statement and also initialed it where an error had been corrected. Detective Winward also took [Dyches'] statement that night. It was consistent with [Jones'] statement.

Police responded to the 3400 block of Kipp Street at 8:34 PM and secured the area. Philadelphia Police

> Officer Terrence Mulvey [("Officer Mulvey")] recovered a .9mm fired cartridge case from the scene later that night. Officer Robert Stott [("Officer Stott")] of the Philadelphia Police Firearm Identification Unit offered expert testimony that the shell casing found on the scene indicated that a shot had been fired in the immediate area.
>
> Prior to the start of trial, Detective Martin Sheeron [("Detective Sheeron")] was assigned to find Dyches when he failed to appear in court for the scheduled preliminary hearing. Detective Sheeron continued to search for Dyches when he failed to appear at trial, but his efforts were unsuccessful. Jones, himself, failed to appear in court on three separate dates. He did appear for the preliminary hearing on June 6, 2012. That day, an intern at the Philadelphia District Attorney's Office overheard Jones on a phone call outside of the courtroom. He said, "I don't know why they are threatening me, I'm not going to say shit about the case or nothing." Following the telephone call, [Jones'] testimony changed from his police statement.

Trial Court Opinion, 9/10/14, at 2-3 (record citations omitted).

On August 30, 2013, a jury found Delacruz guilty of the above-referenced crimes. On January 16, 2014, the trial court sentenced Delacruz to an aggregate term of six to twelve years of incarceration. On February 12, 2014, Delacruz filed a timely notice of appeal.

On appeal, Delacruz raises the following issue for our review and determination: Was the evidence insufficient to sustain a conviction of REAP? Delacruz's Brief at 3. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

- 4 -

Section 2705 of the Crimes Code defines the crime of REAP as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. To support a REAP conviction, the conduct in question must create an actual, not merely theoretical or perceived, danger. *Commonwealth v. Cancilla*, 649 A.2d 991, 994 (Pa. Super. 1994) ("Danger, and not merely the apprehension of danger, must be created. Therefore … ("[18 Pa.C.S.A.] § 2705 retains the common law assault requirement of actual present ability to inflict harm.") (quoting *Commonwealth v. Trowbridge*, 395 A.2d 1337, 1340 (Pa. Super. 1978)). To establish the existence of an actual danger of death or serious bodily injury in a REAP case involving a gun, the Commonwealth must establish that the gun was loaded to secure a conviction. *See Commonwealth v. Smith*, 437 A.2d 757, 759 (Pa. Super. 1981) (holding that REAP conviction based on threat of shooting requires proof that the firearm was loaded).

First, Delacruz argues that the evidence was insufficient to sustain his conviction of REAP because there was no evidence that Delacruz actually fired a gun during the incident. Delacruz's Brief at 10, 13. Delacruz asserts

that there were several other people outside with him during the incident, and any one of those people could have fired the gun. *Id.* at 11. Second, Delacruz contends that there was no evidence that when he pointed the gun at Jones, prior to the gunshot, that it was loaded. *Id.* at 10-11, 13. Third, Delacruz claims that even if he fired the gun, there was no evidence as to the direction in which he was pointing the gun when he fired it. *Id.* at 11.

Delacruz relies entirely on the change in Jones' recollection of the incident from when Jones gave his statement to police to when he testified at trial. At trial, Jones testified that he did not see a gun and that while he heard a gunshot, he did not know who fired the gun. N.T., 8/27/13, at 84-92. In this regard, Delacruz ignores the requirement that we view the evidence in the light most favorable to the Commonwealth and that the jury was free to believe all, part, or none of the evidence, including Jones' statement to police.

The evidence, viewed in the light most favorable to the Commonwealth, establishes the following. During the course of a fight Delacruz was having with his ex-girlfriend, Jones and Dyches arrived at the scene and spoke with Delacruz. N.T., 08/27/2013, at 72-83. Jones and Dyches spoke with Delacruz for a few minutes before Delacruz mumbled something and walked away. *Id.* at 82-83. According to Jones' statement to police, after Delacruz walked away from his conversation with Jones and Dyches, Jones overheard Delacruz telling someone to "bring the hammer

around." N.T., 08/27/2013, at 100. Jones knew "hammer" to mean a gun. *Id.* Jones told police that he then observed another man hand Delacruz a silver nine-millimeter gun. *Id.* at 100, 110-11. Jones further told police that as Delacruz approached Jones with the gun, Jones said to him, "What, you want to shoot me? Shoot me then." *Id.* at 101. According to Jones' statement to police, Delacruz then pointed the gun at Jones and as Jones turned away from Delacruz, Delacruz fired the gun. *Id.* at 101, 110-11. Later that night, Officer Mulvey recovered a discharged nine-millimeter shell from the scene. N.T., 08/28/2013, at 127-28.[2] Officer Stott testified that the recovery of this shell casing indicated that a shot had been fired in the immediate vicinity. *Id.* at 118.

Therefore, the certified record reflects that Delacruz fired a gun during the incident, that when he pointed the gun at Jones, it was loaded, and that he pointed the gun in Jones' direction when he fired the gun. Thus, each of Delacruz's arguments fails. It is immaterial that Jones' recollection of the incident changed from the time he gave his statement to police to the time of trial as the jury was free to believe the version of the incident that he originally gave to police. *See Ramtahal*, 33 A.3d at 607. Accordingly, we conclude that the evidence was sufficient to sustain the REAP conviction.

Judgment of sentence affirmed.

---

[2] The transcript from August 28, 2013 is incorrectly labeled as August 28, 2012 in the certified record on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2015